This case involves an action by a creditor to enforce a guaranty agreement against the guarantor of a corporate commercial charge account. Marvin's, Inc., a building supply company, sued Bordeaux Construction Company, Inc., and Michael H. Robertson for the balance due on Bordeaux's commercial charge account with Marvin's. Robertson was the sole individual guarantor on an account that Bordeaux opened with Marvin's in 1981. The trial court, sitting without a jury, entered a judgment for Marvin's and against Bordeaux in the sum of $10,802.50 plus costs, but it also determined that Marvin's had failed to make out a case against the individual defendant Robertson as guarantor, and, therefore, rendered a judgment in favor of Robertson as well. Marvin's appeals from the judgment in favor of Robertson.
The record reveals that Bordeaux opened a commercial charge account and entered a security agreement with Marvin's on June 4, 1981, and that Robertson signed the agreement as individual guarantor. Isahc Titshaw, the corporate credit manager of Marvin's, rejected an earlier agreement dated May 28, 1981, because Robertson had signed that agreement as guarantor in his capacity as president of Bordeaux, which violated a Marvin's policy that all corporate accounts be personally guaranteed. Although there was only one credit agreement, Bordeaux was billed by individual charge accounts for each construction project.
Bordeaux was one of the best customers of Marvin's, and its credit limit was increased to approximately $100,000 by 1987. When Bordeaux's account became delinquent *Page 393 
in 1987, Marvin's froze the account, no longer allowing Bordeaux to buy materials on credit and requiring cash payment for purchases while the account remained delinquent. In 1988, after Bordeaux had paid off the balance of its delinquent account, Marvin's again allowed Bordeaux to charge on a commercial account. Bordeaux and Marvin's signed no new agreement at this time, and Bordeaux's credit limit was set at $7500. When Bordeaux's account again became delinquent in 1989, Marvin's sued both Robertson as individual guarantor and Bordeaux for the balance due.
Robertson contended at trial that when Marvin's allowed Bordeaux to charge purchases again in 1988, either a novation of the 1981 agreement occurred or a new oral security agreement was created with Bordeaux that did not hold Robertson as an individual guarantor. The trial judge apparently accepted one or both of these theories when he ruled in Robertson's favor, thus releasing him from any personal liability on the remaining debt.
In reviewing the judgment of a trial court, this Court will not presume error and will affirm the trial court's judgment if it is supported by any valid legal ground. Turner v.Clutts, 565 So.2d 92, 94 (Ala. 1990); Odom v.Blackburn, 559 So.2d 1080 (Ala. 1990). Where ore tenus evidence is presented to the trial court, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gastonv. Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar MiningCo. v. Mineral Land Mining Consultants, Inc.,392 So.2d 1177 (Ala. 1981). The judgment of a trial court based on ore tenus evidence is presumed correct, and its findings "will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence." McCoyv. McCoy, 549 So.2d 53, 57 (Ala. 1989). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment.Gaston, supra; Smith v. Style Advertising,Inc., 470 So.2d 1194 (Ala. 1985); League v.McDonald, 355 So.2d 695 (Ala. 1978).
We find the evidence insufficient to support the novation theory. "A novation is the substitution of one contract for another, which extinguishes the pre-existing obligation and releases those bound thereunder. . . . In addition, the party alleging a novation has the burden of proving that such was the intention of the parties."Pilalas v. Baldwin County Sav. Loan Ass'n,549 So.2d 92, 94-95 (Ala. 1989) (citations omitted). Whether parties to a contract intended a novation may be deduced from the facts and circumstances. Bledsoe v. Cargill, Inc.,376 So.2d 735, 736 (Ala.Civ.App. 1979). "This court has held that to establish a novation there must be: (1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto." Warrior Drilling Engineering Co. v.King, 446 So.2d 31, 33 (Ala. 1984). The record indicates that Robertson failed to prove the third element of a novation; the parties never discussed whether the 1981 security agreement remained valid after Marvin's allowed Bordeaux to resume its credit privileges in 1988. Because Robertson and Marvin's did not discuss whether the 1981 contract remained valid, they could not have agreed to extinguish it in favor of a new obligation, so there could have been no novation.
Robertson argues in the alternative that a new credit agreement was created orally between Bordeaux and Marvin's in 1988 that did not include Robertson's personal guaranty. Although Robertson testified at trial that there was no new agreement in 1988, he argues that this statement should not be taken out of context and that ample evidence in the record would have supported a conclusion that there was a new agreement or novation in 1988. We can not agree. One of the elements of a valid contract is an agreement among the *Page 394 
parties as to its terms, in other words a meeting of the minds.See Farmers Merchants Bank of Centre v. Hancock,506 So.2d 305, 310 (Ala. 1987). There is no evidence in the record to support a finding of any agreement or meeting of the minds between the parties as to a second credit agreement that would not hold Robertson liable as a guarantor.
Titshaw, the corporate credit manager of Marvin's, testified that company policy required that all corporate credit accounts be personally guaranteed, and that he would approve no corporate account unless it carried a personal guaranty by someone in an individual capacity. He also testified that an account was not closed when it was frozen, but rather that no further charges were allowed on that account until the balance was paid; and that when the balance on a frozen delinquent account was paid off, the account was reactivated, based on the original credit agreement, much in the same way that a personal credit card account works when its credit limit is exceeded. This evidence was not disputed at trial. Furthermore, there is no evidence to support a conclusion that Marvin's intended to establish a new corporate credit account with Bordeaux in 1988.
Because the evidence does not support Robertson's judgment, on either theory, that judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.