THOMPSON, Presiding Judge.
 

 Larry R. Brewster appeals from the judgment of the St. Clair Circuit Court quieting title to five parcels of property in Soterra, LLC (“Soterra”). For the reasons set forth herein, we affirm the judgment in part and reverse it in part.
 

 Brewster filed an action against Soterra on January 9, 2007, in which he sought to quiet title to five parcels of property in St. Clair County. Brewster asserted that he had taken possession of the five parcels and that he owned those parcels because he was a descendant and heir of certain individuals who had previously owned them. Throughout the record and on appeal, the parties refer to those five parcels as parcel A, parcel B/A, parcel B/B, parcel C/A, and parcel C/B. The relative locations of those parcels are not important to a disposition of this appeal.
 

 The trial court held a bench trial in the action on October 14, 2009.
 
 [1]
 
 Brewster testified that he was a descendent of the Cochran family through his mother. He testified that his great-great-grandfather was Alex Cochran. He introduced a deed from March 27, 1934, pursuant to which Alex Cochran and his wife, Eliza Cochran, transferred parcel A to Eugene Cochran. Brewster testified that in his review of records at the St. Clair Probate Court, he did not find any deed transferring parcel A from Eugene Cochran. As to parcel B/A, Brewster offered into evidence a deed dat
 
 *147
 
 ed November 6, 1917, pursuant to which Alex, Eliza, and May Cochran conveyed parcel B/A to James Cochran. As to parcel B/B, Brewster offered into evidence a deed dated December 31, 1904, pursuant to which Alex Cochran conveyed parcel B/B to Jacob Cochran. Brewster introduced a later deed, dated June 22, 1927, pursuant to which Alex and Eliza Cochran conveyed a one-half interest in parcel B/B to Neal Cochran.
 
 [2]
 
 Brewster introduced a deed dated February 15, 1935, pursuant to which Neal Cochran conveyed parcel B/B to James Cochran.
 
 [3]
 
 As to parcel C/B, Brewster introduced into evidence a deed dated May 27, 1920, pursuant to which the Alabama State Land Company conveyed parcel C/B to Eugene Cochran. Brewster then introduced a deed dated May 26, 1943, pursuant to which Eugene Cochran and his wife, Bernice Cochran, conveyed parcel C/B to Greif Brothers Cooperage Corporation. Beyond the above-described deeds, Brewster did not offer any evidence demonstrating that title to the disputed parcels had descended to him, either through testate or intestate succession.
 

 Brewster testified that he regularly goes to parcel C/A and that he has been doing so since the early 1980s. He testified that he had hunted on some of the other property at issue in the action. He testified that Soterra began developing some of the property at issue in June 2009 but that, before that time, he had not seen any representatives of Soterra on the property. On cross-examination, however, Brewster testified that he had not done anything on parcels A, B/A, and B/B. He stated that he had entered parcels B/A and B/B only for the purpose of reaching the south side of property that he owned. He stated that Soterra had planted trees and harvested timber on parcel C/B.
 

 In spite of the fact that, in his complaint, he sought an order quieting title in him to parcel B/A, Brewster testified that he was not claiming title to that parcel of property. In addition, after Brewster rested his case, the parties and the trial court determined that Soterra was not challenging Brewster’s title to parcel C/A. Thus, the only parcels at issue in the action were parcel A, parcel B/B, and parcel C/B.
 

 John Baker, Soterra’s vice president of property administration, testified that Sot-erra had cut timber on parcels A and C/B and had reforested that area during the mid- to late 1990s. Soterra submitted into evidence numerous invoices relative to its reforestation project of those parcels. Baker testified that in 1991 Soterra granted an easement across parcel C/B to a developer so that the developer could develop a subdivision. Baker testified that the developer had subsequently granted an easement from the subdivision to parcel A and that, as part of that agreement, a gate had been installed limiting access over the easement to that parcel to those individuals and entities permitted by Soterra. Baker testified that in 1992 Soterra conveyed to Alabama Power Company a 30-foot easement across parcel C/B, and Sot-erra entered into evidence the document effecting that conveyance. Baker testified that in 2005 Soterra leased the mineral rights in parcel A to another company.
 

 During Baker’s testimony, Soterra entered into evidence a deed dated October 1, 1975, pursuant to which Greif Brothers Corporation, which had previously been known as Greif Brothers Cooperage Corporation, conveyed a tract of land including
 
 *148
 
 parcel A to Soterra, Inc., the predecessor to Soterra. Soterra also entered into evidence a deed dated August 10, 2006, pursuant to which a company known as Headwaters Investment Corporation conveyed parcels B/A and B/B to Soterra. Soterra offered into evidence a typewritten version of the May 26, 1943, deed pursuant to which Eugene and Bernice Cochran conveyed parcel C/B to Greif Brothers Cooperage Corporation. Soterra also entered into evidence a deed dated October 1,1975, pursuant to which Greif Brothers Corporation conveyed parcel C/B to Soterra, Inc.
 

 Baker testified that Soterra leased certain parcels to hunting clubs. Soterra offered into evidence several lease agreements, the earliest dating from 1999, by which Soterra leased to two hunting clubs certain parcels of land, including parcels A and C/B, for hunting.
 

 On October 28, 2009, the trial court entered a final judgment in favor of Soterra. It found that Brewster was not in peaceable possession of the five parcels and, as a result, that he could not maintain an action to quiet title to those parcels. The trial court found that Soterra was in peaceable possession of, and had proven that it had superior title, to the parcels. Thus, the trial court quieted title to the five parcels in Soterra. Brewster filed a timely appeal to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The standard by which this court reviews quiet-title actions that are heard ore
 
 tenus
 
 is the same as the review applied in other types of
 
 ore tenus
 
 actions.
 
 Denson v. Gibson,
 
 392 So.2d 523, 524 (Ala.1980).
 

 “In reviewing the judgment of a trial court, this Court will not presume error and will affirm the trial court’s judgment if it is supported by any valid legal ground.
 
 Turner v. Clutts,
 
 565 So.2d 92, 94 (Ala.1990);
 
 Odom v. Blackburn,
 
 559 So.2d 1080 (Ala.1990). Where ore tenus evidence is presented to the trial court, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 Gaston v. Ames,
 
 514 So.2d 877, 878 (Ala.1987);
 
 Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc.,
 
 392 So.2d 1177 (Ala.1981). The judgment of a trial court based on ore tenus evidence is presumed correct, and its findings ‘will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence.’
 
 McCoy v. McCoy,
 
 549 So.2d 53, 57 (Ala.1989). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.”
 

 Marvin’s, Inc. v. Robertson,
 
 608 So.2d 391, 393 (Ala.1992).
 

 Section 6-6-540, Ala.Code 1975, provides the statutory basis for an action seeking to quiet title:
 

 “When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same.”
 

 Thus,
 

 “[t]he right to quiet title conferred by our statute is in any person: (1) When
 
 *149
 
 he is in peaceable possession of the land, whether actual or constructive, claiming to own the same in his own right, or in a representative capacity; (2) when his claim is denied or disputed or when any other person claims or is reputed to own the same or any part thereof; and (3) no suit is pending to enforce or test the validity of such title or claim.”
 

 Gill v. More,
 
 200 Ala. 511, 517, 76 So. 453, 459 (1917).
 

 On appeal, Brewster contends that the trial court erred when it found that he was not in peaceable possession of the parcels at issue. He argues that he had constructive possession of those parcels because, he argues, he has title to them. We disagree.
 

 Constructive possession is found when one has legal title to property but is not in actual possession of that property.
 
 Hinds v. Slack,
 
 293 Ala. 25, 28, 299 So.2d 717, 719 (1974). Our review of the evidence fails to disclose any evidence indicating that Brewster owned the parcels in dispute as a result of his relationship to the Cochran family. Brewster proved that members of his family from several generations back on his mother’s side had owned the disputed parcels; he did not put on any evidence, however, that the property had descended to him, either through testate or intestate succession. That his remote ancestors once owned certain property is not sufficient evidence of his current ownership of that property.
 
 See Mt. Gilead Church Cemetery v. Woodham,
 
 453 So.2d 362, 365 (Ala.1984) (holding that the mere fact that an individual testifies that his ancestor previously owned certain property is not sufficient to prove the individual’s present ownership of land in the absence of evidence regarding the heirs of the ancestor). Because Brewster did not prove that he had constructive possession of the parcels at issue, his argument does not provide a basis on which to reverse the trial court’s judgment.
 

 Brewster next contends that Soter-ra’s evidentiary showing at trial was insufficient to defeat his claim to the property at issue. He argues that Soterra did not trace its title to the disputed parcels beyond the companies that had transferred those parcels to it. Brewster also appears to argue that Soterra did not sufficiently demonstrate that it had possession of the disputed parcels.
 

 As previously noted, Brewster failed to demonstrate valid title to the disputed parcels. Although he takes issue with the fact that Soterra did not trace its line of title beyond its immediate transferors, Brewster cites no legal authority standing for the proposition that a claimant of real property must demonstrate that the entity transferring the disputed property to it had valid title to the property, especially when, as in this case, the other claimant has failed to present any evidence showing that he or she had good title to the property.
 

 Soterra, in addition to demonstrating valid title in the disputed parcels, was required to prove that it was in peaceable possession of those parcels. Testimony and documentary evidence at trial indicated that Soterra had cut timber on and had reforested parcels A and C/B during the mid- to late 1990s, had granted multiple easements across parcel C/B, had received an easement providing it controlled access to parcel A, had leased the mineral rights to parcel A to another company, and had leased parcels A and C/B to hunting clubs. This was sufficient evidence of Soterra’s actual possession of parcels A and C/B.
 
 See Mt. Gilead Church Cemetery,
 
 453 So.2d at 365 (“Both peaceable possession and claim of title are indicated by the evidence that the Powells and Woodhams
 
 *150
 
 appropriated the lumber from the storm-damaged church and the evidence that the Woodhams cut timber from the land over the years, including large-scale operations and plantings shortly before the suit was broughtThe evidence also demonstrated that Soterra constructively possessed parcel B/B by virtue of its title to that property, given that Brewster presented no evidence indicating that he was in possession of that parcel.
 
 See Hinds,
 
 293 Ala. at 28, 299 So.2d at 719 (Title to property constitutes constructive possession of that property when no other entity is in actual possession thereof.).
 

 Thus, with respect to parcels A, B/B, and C/B, the evidence of record sufficiently supports the trial court’s finding that Sot-erra had proven its possession of the disputed parcels. Brewster’s testimony that he had hunted on some of the disputed property did not undermine the trial court’s finding because “[i]solated acts by [Brewster], indicating possession but not amounting to interference with [Soterra’s] peaceable possession, do not defeat [Soter-ra’s] claim.”
 
 Mt. Gilead Church Cemetery,
 
 453 So.2d at 365 (indicating that occasional burials in cemetery on disputed property were not sufficient to interfere with the plaintiffs peaceable possession of the disputed property). Thus, that portion of the trial court’s judgment quieting title in Soterra with regard to parcels A, B/B, and C/B is due to be affirmed.
 

 The trial court also quieted title to parcel C/A in Soterra. Soterra indicated at trial and reiterates on appeal that it does not dispute Brewster’s claim to parcel C/A. Because Soterra did not claim title to parcel C/A, it did not put on any evidence demonstrating either title to or possession of that parcel. As a result, that portion of the trial court’s judgment quieting title to parcel C/A in Soterra is not supported by the evidence and is due to be reversed.
 
 [4]
 

 Based on the foregoing, we reverse the trial court’s judgment to the extent that it quiets title of parcel C/A in Soterra, we affirm the balance of the judgment,
 
 [5]
 
 and we remand the cause to the trial court for the entry of a judgment consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Soterra had filed a motion for a summary judgment and a brief in support of that motion. To its brief, Soterra had attached a number of deeds and other documents relative to the parcels at issue. The trial court denied Soterra’s motion. Although the trial court indicated that it would treat Soterra's summary-judgment brief as a trial brief, the record does not reflect that the deeds and other documents attached to the brief were entered as evidence at trial.
 

 [2]
 

 . The record does not reflect that Jacob Cochran had transferred parcel B/B back to Alex Cochran and Eliza Cochran.
 

 [3]
 

 . The record does not reflect that the other half interest to parcel B/B had been transferred to Neal Cochran.
 

 [4]
 

 . The fact that the trial court erred when it quieted title to parcel C/A in Soterra does not mean that it also erred in failing to quiet title to that parcel in Brewster. One of the elements of a quiet-title action is that the plaintiff’s title is challenged in some manner.
 
 See Gill,
 
 200 Ala. at 517, 76 So. at 459. Because Soterra admitted at trial that it did not challenge Brewster’s ownership of that parcel, Brewster was not entitled to the remedy of having title in parcel C/A quieted in him.
 

 [5]
 

 . Brewster has not challenged the judgment quieting title to parcel B/A in Soterra on the basis that that remedy was unavailable to Soterra because he repudiated his claim to title to that parcel.